## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   CV07-7965-GW(RZx)                                          Date   March 20, 2008

Title      Myriad Travel Marketing v. South African Tourist Corporation et al

Present: The Honorable    GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| J. Gonzalez/S. Hall-Brown | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Rebecca Davis Stein | John C. Steele |

PROCEEDINGS:      **DEFENDANTS SOUTH AFRICAN TOURISM BOARD, JOHANNES VAN DER
WALT AND DR. SANISA BALOYI'S MOTION TO DISMISS UNDER FRCP 9(b)
AND 12(b) (filed 2/25/08)**

Hearing is held.  Court and counsel confer.  The tentative ruling is adopted as the Court's final ruling
(attached hereto).  Defendants South African Tourism Board, Johannes Van Der Walt and Dr. Sanisa
Baloyi's Motion to Dismiss under FRCP 9(b) and 12(b) (filed 2/25/08) is **granted in part and denied in
part**.

IT IS SO ORDERED.

|  |  : | 04 |
|---|---|---|
| Initials of Preparer | JG/SHB | |

<u>**Myriad Travel Marketing, Inc. v. South African Tourist Corporation**</u>

Case No. CV 07-7965

Tentative Ruling on Motion to Dismiss

## I. Background

Plaintiff Myriad Travel Marketing, Inc. ("Plaintiff") filed suit in Los Angeles County Superior Court on September 28, 2007, against the South African Tourism Board (erroneously as the South African Tourism Corporation) ("SATB") and several individual defendants. Plaintiff then filed a first amended form Complaint. SATB removed this action on December 6, 2007, asserting that it is a "foreign state" as defined by 28 U.S.C. § 1603 and entitled to removal pursuant to 28 U.S.C. § 1441(d). On February 11, 2008, this Court entered an order deeming filed as of that date a Second Amended Complaint ("SAC"). The SAC sets forth two causes of action: 1) fraud, against all defendants; and 2) a book account, against SATB. The six individual defendants in the action are alleged to be either officers of SATB or members of SATB's Board of Directors. *See* SAC ¶¶ 3-8.

Plaintiff alleges that it entered into agreements with SATB in May 2002 and September 2003 "to provide representation and services including production of brochures, sales materials, prospective mailings, web materials and production materials with regard to marketing and advertising South Africa as a travel destination in the United States Market Territory." SAC ¶¶ 12-13 & Exhs. 1-2. In May 2004, Plaintiff attended "Indaba, the largest annual travel trade convention in South Africa at the request of SATB." SAC ¶ 14. At that meeting, Plaintiff alleges that it spoke with the six individual defendants and an additional individual, SATB's chief marketing officer, Themba Khumalo. *See id.* Plaintiff alleges that the discussions concerned additional contracts, each of which "would include not only the United States Market Territory but also the United Kingdom Market Territory." *Id.*

Plaintiff alleges that, at Indaba, the individual defendants each "represented to plaintiff that they looked forward to continuing their relationship with [Plaintiff] and working with [Plaintiff] in the future with regard to the U.S. and U.K. Market Territories." SAC ¶ 15. Based on its eight-year relationship with SATB, Plaintiff believed that negotiations for future contracts would occur "after the expiration of the future contract" and that the negotiations

1

"could extend for months before execution of a formal agreement." *Id.* However, in reliance upon the above representations, Plaintiff "agreed to continue to provide representation and services to defendants and each of them[] while the U.S. and U.K. contracts were being formalized." *Id.*

While performing work for SATB, Plaintiff expressed concern about the finalization of the contracts on or about August 16, 2004. *See* SAC ¶ 16. Apparently at that time, "[d]efendants and each of them[] represented to [Plaintiff] that there were still budgetary issues to be resolved with regard to the promised contracts but continued to confirm defendants' desire to enter into these contracts with [Plaintiff]." *Id.* Similar representations followed shortly thereafter. *See* SAC ¶¶ 18. On or about September 1, 2004, defendants represented that upon expiration of their earlier agreements, defendants desired a month to month extension of the parties' original contract while the new U.S. and U.K. agreements were being formalized. *See* SAC ¶ 19. SATB agreed to pay Plaintiff a monthly retainer for services to be invoiced monthly as well as other fees and expenses. *See* SAC ¶ 19 & Exh. 3.

At the invitation of SATB, in September 2004 Plaintiff attended SATB's Market Planning Meetings at a hotel in Johannesburg. *See* SAC ¶ 20. During these meetings, individual defendant Moekeski Mosola represented that "defendants and each of them" would pay Plaintiff "for the representation and services rendered after July 31, 2004 and that new contracts for the U.S. and U.K. Market Territories were forthcoming." *Id.* Khumalo, who was present during this discussion, independently confirmed that "defendants wanted to continue their work with [Plaintiff] and that the subject contracts were being prepared." SAC ¶ 21. Mosola repeated the representations at a meeting in New York City in September 2004. *See* SAC ¶ 22. "[D]efendants and each of them" again repeated similar representations in October 2004 and on or about November 23, 2004. *See* SAC ¶¶ 24, 26.

Throughout the time period covering these representations, the defendants continued to ask Plaintiff to perform a variety of tasks for them. *See* SAC ¶¶ 17-18, 20, 23-25, 30.

Ultimately, in early December 2004, Mosola was promoted to become SATB's Chief Executive Officer. *See* SAC ¶ 29. On or about December 10, 2004 Mosola contacted Plaintiff and "stated that there would be no U.S. or U.K. Market Territories contracts with [Plaintiff] as defendants and each of them[] had decided to no longer work with [Plaintiff]." *Id.* Again, however, Mosola represented that Plaintiff would be paid for all representation

and services it rendered to SATB after July 31, 2004, and that defendants were in possession of the invoices. *See id.* & Exh. 3.  Plaintiff's invoices have not been paid. *See* SAC ¶¶ 31-33.

Defendants SATB, Johannes Van der Walt and Dr. Danisa Baloyi (collectively "Defendants") have moved to dismiss the SAC, arguing that 1) Plaintiff's claim for a book account fails to state a claim and is time-barred, 2) Plaintiff's fraud claim lacks particularity, fails to state a claim, and is time-barred, and 3) Plaintiff has failed to allege any basis for personal liability or personal jurisdiction for any of the individual defendants.

## II. Analysis

### Preliminary Issue

An "agency or instrumentality of a foreign state" includes a corporate or other entity where a majority of the shares are owned by a foreign state. *See* 28 U.S.C. § 1603(a), (b). Here, it is unclear on what basis SATB asserts that it satisfied 28 U.S.C. § 1603(a).  It offers no facts, only a bald assertion, in its Notice of Removal, *see* Notice of Removal at 1:18-19, and a citation to *Virtual Countries, Inc. v. Republic of South Africa*, 148 F.Supp. 256, 268-69 (S.D.N.Y. 2001), *aff'd*, 300 F.3d 230 (2d Cir. 2002), for the proposition that it is an agency or instrumentality of the Republic of South Africa.  However, in that case, the complaint included an allegation that SATB was such an agency or instrumentality and the plaintiff's motion papers repeated that assertion. *See id.* at 259, 262-63 & n.7.  In addition, that case appears to have been originally filed in federal court, not removed to federal court under section 1441(d), and thus SATB was not confronted with having to demonstrate jurisdictional facts.

*Virtual Countries* is over six years old.  Even if that court was correct in its conclusion, SATB would still be obligated to demonstrate that its status has not changed in the interim.  Here, Plaintiff has only alleged that SATB is organized under the laws of South Africa, with its principal place of business in that country, and "is in the business developing [sic] and implementing a world-class international tourism marketing strategy for South Africa." SAC ¶ 2.  SATB must provide evidence that it satisfies 28 U.S.C. § 1603 to ensure that this matter was properly removed.

**Merits**

Book Account

Defendants argue that Plaintiff's book account claim is simply an improper attempt to plead around the fact that a claim for breach of oral contract would be barred by the two year statute of limitations. Defendants' argument may be well-taken at the summary judgment stage for many of the reasons discussed in *Filmservice Labs., Inc. v. Harvey Bernhard Enters., Inc.*, 208 Cal.App.3d 1297, 1307-08 (1989) and *Tillson v. Peters*, 41 Cal.App.2d 671, 676 (1940). However, Witkin recognizes that "[i]f . . . the obligation resulting from the oral transactions is, by the agreement or conduct of the parties, embodied in a book account, the creditor has 4 years to sue." 3 Witkin, California Procedure:  Actions, § 481, at 606 (emphasis added).   Plaintiff alleges that it began preparing monthly invoices, including retainers, and that SATB (through Mosola) promised payment. *See* SAC ¶¶ 19-20, 22, 24, 29. Such allegations are sufficient to demonstrate an agreement to proceed by way of book account, at least for purposes of a Rule 12(b)(6) motion.[1]   Plaintiff's earlier Amended Complaint, although appearing to plead a breach of oral contract claim, does not appear to be entirely inconsistent with a book account claim and therefore should not be seen as rendering the instant book account claim as an instance of sham pleading. *See* Amended Complaint ¶ BC-1 (although identifying the contract as a written contract, alleging the parties entered into an "oral extension" of that written contract).

In addition, the document attached as Exhibit 3 to the SAC appears to be a document "kept in [a] reasonable permanent form or manner" and appears to satisfy the other requirements for a book account under California Civil Code section 337a. Plaintiff's book account claim therefore does not suffer from a failure to state such a claim. The Court will deny Defendants' motion as to Plaintiff's claim for a book account.

Fraud

Plaintiff identifies the representations concerning the intent to enter into additional contracts and the promises of payment pursuant to a month-to-month extension of the

---

[1] Among other things Plaintiff would have to contend with at summary judgment in order to avoid application of a two-year statute of limitations is how SATB can be said to have agreed to proceed by way of book account at the same time it was allegedly promising Plaintiff that a contract was forthcoming.

"previous contract"[2] as the actionable misrepresentations in this action. *See* SAC ¶¶ 35-36, 38, 41. With respect to this claim, Defendants argue that Plaintiff has failed to plead the requisite elements with the required specificity and, even if it has, the claim is barred by the statute of limitations.

Defendants are correct that Plaintiff has failed to plead the requisite elements with the necessary specificity, at least as to individual defendants Van der Walt and Baloyi. Rule 9(b) of the Federal Rules of Civil Procedure states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. Rule 9(b). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant...and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG, LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007). Van der Walt and Baloyi are only lumped together with the other individual defendants in connection with certain representations that were allegedly made at Indaba in May 2004. *See* SAC ¶¶ 14-15. Although Plaintiff attempts to avoid this rule by virtue of relying on assertions of conspiracy, a conspiracy theory would only be necessary for purposes of imposing liability on the officers and directors in their personal capacity (as there need not have been a conspiracy for SATB to be potentially liable, only an SATB officer or director making false representations in their corporate capacity). As Plaintiff has not alleged any reason for such personal capacity liability in the SAC, resort to a conspiracy theory is ineffectual. If Plaintiff seeks to pursue the fraud claim against the individual defendants, it must specify each individual making each allegedly false representation so as to avoid having to rely on any conspiracy theory, even if viable.

While Plaintiff has failed the specificity requirements in this regard as to Van der Walt and Baloyi, it arguably has not done so as to SATB. Plaintiff has identified some of the particular statements by certain individual defendants who are not yet before the Court and who were apparently acting in their official capacity. *See, e.g.*, SAC ¶¶ 20, 22. Even these more specified allegations might be viewed as problematic, however, for the following

---

[2] This contradicts the allegation at paragraph 19 of the SAC that the month-to-month extension would be pursuant to the parties' "original contract."

reason.

"Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged…. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Plaintiff has not only failed to separate out in most instances the particular person alleged to have made the particular representation, it has also failed to allege why the statements were false <u>when made</u>, other than in conclusory fashion. *See* SAC ¶¶ 39, 41. The alleged representations are in the nature of false promises.  As to those types of representations, a plaintiff must allege facts – other than mere nonperformance – demonstrating that the promises were knowingly false when made, in other words that they were made without any intention of performance. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996); *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 2008 WL 618921, *6 (N.D. Cal. Mar. 5, 2008); *see also* 5 Witkin, Summary of Calif. Law, Torts § 781, at 1131-32.  However, as Rule 9(b) makes plain, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Although Plaintiff will have to demonstrate something more than nonperformance to <u>prove</u> that the representations were false when made,[3] the instant allegations suffice for purposes of Rule 9(b) and a motion to dismiss. *See Cooper v. Pickett*, 137 F.3d 616, 628 (9th Cir. 1997).

Plaintiff has therefore sufficiently plead a fraud claim against only SATB and only with respect to the allegations that specifically identify the speaker or particular person making the alleged misrepresentation(s). *See* SAC ¶¶ 20-22.  If Plaintiff hopes to proceed on any representations other than those identified in those specific paragraphs of the SAC, it should amend the SAC even as to SATB.

Defendants' statute of limitations argument is weaker.  They argue that Plaintiff either discovered or should have discovered by September 28, 2004 (three years before Plaintiff filed this action in state court) that the pre-September 28, 2004 alleged misrepresentations were false.  To the contrary, Plaintiff has set forth sufficient allegations for why it would not have believed those allegations to be false – for reasons related to

---

[3] As Defendants point out, it appears that Plaintiff might have a difficult time in this regard considering that SATB's plans changed once Mosola became SATB's new CEO. *See* SAC ¶ 29.

Defendants' similar argument that Plaintiff cannot plead reasonable reliance, addressed below.[4]

Defendants assert that Plaintiff could not rely on the promise of forthcoming payment where no payment had occurred over a six-month time period. However, while Plaintiff might indeed have difficulty proving reasonable reliance, especially with respect to the alleged misrepresentations which occurred later in the period, it alleged that it had a basis for believing that the negotiations would be lengthy and that SATB was working out budgetary concerns. At the very least this would constitute adequate pleading in connection with the representations occurring within the first month or two after defendants began representing that they would pay on a monthly basis. In addition, Defendants cite to an allegation in the form Amended Complaint that "Defendant had, in the past, requested that Plaintiff continue services after the expiration of a then contract. Plaintiff did so in that instance, and Defendant paid at that time, without incident." If anything, this allegation, which does not appear in the SAC, only helps Plaintiff's case for reasonable reliance, at least as to the initial misrepresentations concerning promises of monthly payments.

The Court will dismiss Plaintiff's fraud claim under Rule 9(b), with leave to amend.

<u>Personal Liability/Personal Jurisdiction</u>

Because of the above-mentioned recommendations, the Court need not even reach Defendants' arguments concerning the deficiencies associated with Plaintiff's case against the individual defendants. However, to save the parties some time, the Court would offer the following comments.

---

[4] Under Rule 12(b)(6), a court must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, 127 S.Ct. at 1964-65. "[F]actual allegations must be enough to raise a right to relief above the speculative level. *Id.* at 1965. Plaintiff cites the now-discredited standard for a Rule 12(b)(6) motion from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Defendants correctly argue that any claims against the individual defendants in their official capacity should be dismissed without leave to amend as redundant of a claim against SATB. Plaintiff has not alleged any basis for any of the individual defendants' liability in anything other than an official capacity. As to personal capacity-liability, Plaintiff would be given leave to amend to have one final opportunity to state such a form of liability against the individual defendants.

Plaintiff has sufficiently <u>alleged</u> personal jurisdiction at this stage: both Van der Walt and Baloyi were "doing business in the City of Los Angeles, the County of Los Angeles, in the State of California." SAC ¶¶ 4-5. However, Plaintiff must ultimately come up with more if it is suing the individual defendants in their personal capacity. Neither party has offered any evidence here, which is customary on a motion attacking personal jurisdiction.

Attorneys' Fees

In the last line of their opening Memorandum of Points and Authorities, Defendants state that "Myriad's request for attorneys' fees should be stricken." Defendants' Memorandum of Points and Authorities at 18:6-7. Defendants offer no explanation for this requested relief, it is not referenced in their Notice of Motion and the SAC does not even appear to request attorneys' fees. Presumably, this language (along with Footnote 3, on page 4) is a carryover from an earlier motion to dismiss.